UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RONALD LEE LAMBERTSON,

    Plaintiff,

v.                             CASE NO. 8:20-cv-1661-KKM-TGW

KILOLO KIJAKAZI,
Acting Commissioner, Social
Security Administration,[1]

    Defendant.
_____

## REPORT AND RECOMMENDATION

The plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits.[2] Because the decision of the Commissioner of Social Security fails to evaluate the plaintiff's testimony regarding a limiting side effect of medication and fails reasonably to assess the plaintiff's treatment for severe obstructive sleep apnea, the decision should be reversed and the matter remanded for further consideration.

---

[1] Kilolo Kijakazi became the acting Commissioner of Social Security on July 9, 2021, and should be substituted as the defendant. See Fed. R. Civ. P. 25(d).

[2] This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998.

I.

The plaintiff, who was fifty-one years old at the time of the administrative hearing and has two associate degrees, worked as an occupational safety and health inspector (Tr. 21, 35, 36). He filed a claim for Social Security disability benefits, alleging that he became disabled due to myocardial infarction, coronary artery disease, diabetes mellitus, diabetic neuropathy, plantar fasciitis, obstructive sleep apnea, renal disease II, bilateral hearing loss, tinnitus, gastroesophageal reflux disease, and left knee pain (Tr. 245). The plaintiff's claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a <u>de novo</u> hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of coronary artery disease, type II diabetes mellitus, diabetic peripheral neuropathy, chronic kidney disease, stage II, secondary to diabetes mellitus, hypertensive chronic kidney disease, severe obstructive sleep apnea, allergic rhinitis, and mild degenerative joint disease and chondromalacia of the left knee (Tr. 17). The law judge determined that, with those impairments, the plaintiff had the following residual functional capacity (Tr. 18):

> [He could] perform light work as defined in 20
> CFR 404.1567(b), with the ability to lift up to 20

pounds occasionally; lift and carry up to 10 pounds frequently; stand or walk 6 hours per 8-hour workday; and sit for 6 hours per workday, with normal breaks. He can occasionally climb ladders, ropes, or scaffolds. He can frequently climb ramps and stairs and frequently balance, stoop, crouch, kneel, and crawl. He must avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, hazards, and irritants, such as fumes, odors, dusts, and gases.

The law judge concluded that, with this residual functional capacity, the plaintiff was unable to perform his past relevant work (Tr. 21). However, based on the testimony of a vocational expert, the law judge determined that the plaintiff could do other jobs that exist in significant numbers in the national economy, such as cashier, cafeteria attendant, and copy machine operator (Tr. 22). Consequently, the law judge found that the plaintiff was not disabled (id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner of Social Security.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results

3

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

4

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff asserts four challenges to the law judge's decision (Doc. 12). The plaintiff's four arguments are that the law judge erred as a matter of law by (1) failing to accord great weight to the opinion of the Department of Veterans Affairs; (2) failing to evaluate the effect of each and every impairment alleged by the plaintiff and the combined effect of those impairments; (3) using as grounds for his decision expert vocational testimony based on a hypothetical question that fails to comprehensively describe all of the plaintiff's impairments; and (4) failing to articulate adequate and explicit reasons for concluding that the plaintiff's subjective complaints were not credible (see Doc. 12, pp. 2, 4, 11, 15). The claims have merit to the extent that they contend that the law judge failed to evaluate the side effects of the plaintiff's diabetes medication, and that the law judge did

not reasonably assess the plaintiff's treatment of severe obstructive sleep apnea.

A. The plaintiff has diabetes mellitus, for which he takes Metformin, an oral diabetes medication (see id., pp. 2, 4, 11; Tr. 54). At the hearing before the law judge, the plaintiff's attorney asked him about his daily routine (Tr. 56). In response to his attorney's question, they had the following exchange (Tr. 56–57):

> A: I'm out of bed at 9 a.m. every morning.... First thing I do is take my medications. After taking the medications . . . I wait to go to the bathroom.
>
> Q: Why is that?
>
> A: The medications I take give me diarrhea and stomach cramps. So as I'm waiting for this to happen after -- it can be anywhere from 30 minutes to maybe two hours if I -- after I take the medications. It depends on how full my stomach is, but it -- it happens every day pretty much. I take the medications, I'll feel a little stomach cramping, and I know it's -- I need to go to the bathroom and I'll wait to the point, okay, it's time to go to the bathroom. The problem with these medications is they cause diarrhea.
>
> Q: How long are you going to be in the bathroom when this happens?
>
> A: With the diarrhea situation, it could be 15 minutes, it could be 30 minutes depending -- it depends a lot on the stomach cramping. Sometimes I'll go to the bathroom, the cramps will

6

> kind of go away quickly, other times I'll be on the toilet for 30 minutes.
>
> Q: Did you take your medications this morning?
>
> A: No, I did not take my medications this morning.
>
> Q: And why did you not take your meds this morning?
>
> A: I did not take them. I do this with any kind of appointments . . . because I knew at some point this morning I was going to need to be on the toilet . . . and I didn't want that to happen while I was here at the building.

Notably, the plaintiff notified his doctors that the diabetes medication, Metformin, caused him to have diarrhea (see Tr. 862, 885, 1646, 1660). His intolerance towards Metformin was noted by several doctors, at various times[3] (see id.). At one such appointment on January 9, 2019, the doctor noted that the adjusted amount of Metformin prescribed to the plaintiff was "the max dose he can tolerate GI-wise" due to his diarrhea (Tr. 885). The plaintiff has been prescribed either 500 mg or 1,000 mg to be taken both in the morning and at night (see id.; Tr. 862, 1646).

The law judge did not mention the plaintiff's complaint of this medication side effect, much less evaluate it. The Eleventh Circuit, citing

---

[3]The plaintiff's various doctors noted his intolerance to Metformin—due to diarrhea—during visits on the following dates: January 9, 2019, March 8, 2019, November 20, 2019, and January 15, 2020 (see Tr. 862, 885, 1646, 1660).

7

Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981), stated that the law judge "has a duty to investigate the possible side effects of medications taken by a claimant." McDevitt v. Commissioner of Social Security, 241 Fed. Appx. 615, 619 (11th Cir. 2007). Thus, the court has recognized that "[i]t is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability." Cowart v. Schweiker, supra, 662 F.2d at 737. Moreover, the Social Security regulations direct the law judge to consider the side effects of medication. 20 C.F.R. 404.1529(c)(3)(iv). Consequently, the failure to conduct an evaluation of possible side effects of medication was determined to be reversible error in McDevitt v. Commissioner of Social Security, supra.

The same error is present here because the law judge failed to evaluate the plaintiff's testimony that he has diarrhea as a side effect of his diabetes medication. Notably, I have found reversible error in several cases due to the failure to evaluate allegations of side effects of medications. See Faircloth v. Astrue, No. 8:12-cv-107-TGW, 2013 WL 461799 at **2–3; Lowman v. Astrue, No. 8:08-cv-1214-TGW, 2009 WL 2134920 at *3 (citing cases). Significantly, the law judge did not even mention the plaintiff's testimony regarding diarrhea in his summary of the plaintiff's alleged symptoms and impairments (see Tr. 22). In all events, no reason was given

for discounting the plaintiff's testimony about this medication side effect and how it may impact the plaintiff's ability to sustain work. The law judge's failure to mention, even implicitly, this testimony indicates that he did not consider it. See Brown v. Commissioner of Social Security, 442 Fed. Appx. 507, 513 (11th Cir. 2011) ("the implication [must be] obvious to the reviewing court") (internal citations omitted). Further, the Commissioner does not dispute that the law judge failed to address the alleged medication side effect. In fact, the Commissioner, like the law judge, simply fails to mention the matter at all.

It is recognized that the plaintiff did not make this a prominent issue. But he did make it (Doc. 12, p. 10). Moreover, the plaintiff testified about this problem (see supra, pp. 6–7). Thus, the contention was properly and fairly raised before the law judge.

The law judge therefore had a duty to make an express credibility determination regarding that testimony. See Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (law judge must state explicit and adequate reasons for discounting subjective symptoms). Accordingly, remand of this matter is warranted.

B. The law judge found that the plaintiff has severe obstructive sleep apnea (Tr. 17). The plaintiff contends that the law judge

9

failed to include any non-exertional limitations, resulting from his severe obstructive sleep apnea, in his residual functional capacity assessment (Doc. 12, pp. 4–5, 9). Specifically, the plaintiff contends that the law judge should have considered whether the plaintiff has "difficulty maintaining concentration for extended periods and being off task due to the effect of fatigue and daytime somnolence; falling asleep without warning; needing naps during the day; and likelihood of being tardy or absent from work in excess of accepted tolerances" (id., p. 10).

If non-exertional limitations were found, this could have an impact on the plaintiff's ability to work. At the hearing, upon questioning by the plaintiff's attorney, the vocational expert testified that a person who is 15% off task in an eight-hour workday would not be able to work (Tr. 64–65). Thus, if the plaintiff's alleged inability to stay awake during the day or to concentrate causes him to be off task 15% during an eight-hour workday, he would be deemed unable to work. The expert also testified that, if the plaintiff has two unexcused absences per month, that would also preclude employment (Tr. 64).

As part of the plaintiff's medical treatment for his severe obstructive sleep apnea, he was provided a CPAP mask to be worn in order to sleep. However, the plaintiff has repeatedly complained of an intolerance

10

towards the mask (Tr. 20, 828, 837, 1542). The plaintiff testified (Tr. 45):

> Q: And have you tried other types of masks and like the nasal mask?
>
> A: Yes, I've -- I've tried every mask that the VA has in their inventory and we also tried just a pure nasal mask at one point.

The plaintiff reported an intolerance for the CPAP mask for a variety of reasons, such as his movement during the night and discomfort caused by the tightness of the head strap (Tr. 837). Further, the plaintiff's intolerance was significantly caused by his allergies. At a sleep consultation the provider determined that a "sinonasal congestion component" could be contributing to the plaintiff's intolerance (see Tr. 20, 840). This led to the provider requesting an ear, nose, and throat consult, and eventually led to the plaintiff seeing an allergist. In short, because the plaintiff could not breathe through his nose due to allergies, he would have dry mouth caused by the CPAP machine, which made it intolerable to sleep (see Tr. 45, 828-829, 837, 1542). Even the use of a nasal mask appeared to be unsuccessful for these same reasons (Tr. 45) As a result, the plaintiff was prescribed Flonase in order to clear his nasal passages and allow use of the CPAP mask.

The law judge stated that the plaintiff had stopped Flonase, an intranasal drug used to treat allergies, and was instructed to restart it (Tr. 20). The plaintiff's reason for stopping this treatment was that he was

11

experiencing a "rebound effect," which appears to have made the Flonase intolerable for the plaintiff (see Tr. 832, 1546). Subsequently, the plaintiff has begun injection therapy for the next five years to treat his allergies (Tr. 45–46, 1652). The purpose of this treatment is to open his nasal passages, so that the CPAP mask might work (Tr. 45–46). Importantly, the evidence shows that the plaintiff was informed that this treatment "can lead to harder to manage systematic reactions if they were to happen, in[cl]uding [sic] ana[]phylactic shock and its mortality risk" (Tr. 1652).

Despite having read the law judge's decision several times, I am unable to discern any meaningful evaluation of the plaintiff's complaints regarding the CPAP mask. The Commissioner seems to suggest that the law judge found that the plaintiff was non-compliant with the mask (Doc. 13, p. 8). The law judge did not make any such express finding. Thus, the Commissioner's suggestion of non-compliance is essentially an unacceptable post hoc rationalization. Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 50 (1983).

Moreover, the pieces of evidence that the Commissioner points to do not add up to non-compliance. Thus, comments by a cardiac ARNP during a physical examination that the plaintiff was "not compliant with his

12

mask" carries little weight due to lack of expertise and an absence of evaluation of the plaintiff's circumstances (Tr. 860–61).

On the other hand, the record contains evidence of the plaintiff's attempts to overcome his problems with wearing a mask. For example, the plaintiff tried every type of mask that the VA had available. Further, when it appeared that the plaintiff's allergies affected his ability to wear a mask, the plaintiff tried a medication (Flonase) to address that problem, but that medication had unpleasant side effects for the plaintiff. The plaintiff then turned to injections. Significantly, the plaintiff was warned that that treatment could cause anaphylactic shock with potentially lethal consequences. The fact that the plaintiff was willing to take that risk to attempt to be able to tolerate wearing a mask strongly negates the idea that the plaintiff was non-compliant with using a mask. In all events, these circumstances needed to be expressly evaluated by the law judge before the plaintiff could reasonably be found to be non-compliant with treatment for his obstructive sleep apnea.

In addition, the plaintiff reasonably argues that the law judge should have considered non-exertional functional limitations due to the plaintiff's severe obstructive sleep apnea. The law judge found that the plaintiff had an exertional functional limitation to light work due to sleep

apnea-related fatigue (Tr. 21). The law judge's finding that the plaintiff had sleep-related fatigue raises the question of whether the plaintiff also had non-exertional limitations from sleep-related fatigue. Thus, the plaintiff indicates that he could be off task due to loss of concentration as a result of the condition, or that he might miss an unacceptable number of days of work. Under these circumstances, the law judge needed to consider possible non-exertional limitations due to severe obstructive sleep apnea. However, the law judge failed to make such an evaluation. That failure also warrants a remand.

For these reasons, I recommend that the decision of the Commissioner be reversed and the matter remanded for further consideration.

Respectfully submitted,

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: August  20 , 2021

NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions or to seek an extension of the fourteen-day deadline. A party's failure to file written objections waives that party's right to challenge on

appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.